IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

WILLIAM JOHNSON, M01525
Plaintiff,

V.

Case No. 26-875-NJR
JURY TRIAL DEMANDED

WEXFORD HEALTH SOURCES INC.,
ROB JEFFREYS,
LATOYA HUGHES,
ANTHONY WILLS,
JOHN/JANE DOE #1,
JOHN/JANE DOE #2,
JOHN/JANE DOE #3,
ANGELA CRAIN
JOHN/JANE DOE #4
CONNIE DOLCE,
MULDENHAUER,
UNIDENTIFIED JOHN/JANE DOES ET AL.,
Defendants.

VERIFIED CIVIL RIGHTS ACT COMPLAINT
TITLED 42 SECTION 1983 U.S. CODE

This is a civil rights complaint filed by William Johnson ("Johnson"), pro se, Plaintiff, a State of Illinois prisoner, under 42 U.S.C. section 1983 alleging United States Constitutional Rights violations under the 8th and 14th Amendments to the United States Constitution.
Johnson also alleges the Tort of Negligence and Intentional Infliction of Emotional Distress.

## JURISDICTION

1. The Court has jurisdiction over Johnson's claims of violation of Federal Constitutional Rights under 28 U.S.C. Section 1331(1) and 1343.

2. The Court has supplemental jurisdiction over Johnson's State Law Tort claims under 28 U.S.C. section 1363.

## PARTIES

3. The Plaintiff, William Johnson, was incarcerated at Menard Correctional Center ("Menard") during the events described in this complaint, and is currently housed within Menard.

4. Defendant, Wexford Health Sources Inc., ("Wexford") was the sole healthcare provider for the Illinois Department of Corrections ("IDOC") inmates, was employed by IDOC at all relevant times in this complaint. Wexford is obligated by Illinois Statute to pay any judgment entered against Defendants employed by or contracted for them in their official capacities. In addition each of the other subordinate Defendants acted as an agent of Wexford while employed at Menard. Wexford is liable for all torts committed by its subordinate Defendants and employees while employed at Menard, pursuant to the doctrine of respondeat superior. Wexford is additionally responsible for the policies and practicies

of Wexford. Wexford is sued in its official and individual capacities.

5. Defendant, Latoya Hughes, ("Hughes") is/was the Director of IDOC and was employed by IDOC at all relevant times in this complaint. Hughes is obligated by Illinois Statute to pay any judgment entered against Defendants employed by or contracted for them in their official capacities. In addition each of the other subordinate Defendants acted as an agent of Hughes while employed at Menard. Hughes is liable for all torts committed by her subordinate Defendants and employees while employed at Menard, pursuant to the doctrine of respondeat superior. Hughes is additionally responsible for the policies and practicies of IDOC and Menard (But not limited to). Hughes is sued in her official and individual capacities.

6. Defendant, Rob Jeffreys, ("Jeffreys") was the Director of the IDOC and was employed by IDOC at relevant times in this complaint. Jeffreys is obligated by Illinois Statute to pay any judgment entered against

Defendants employed by or contracted for them in their official capacities. In addition each of the other subordinate Defendants acted as an agent of Jeffreys while employed at Menard. Jeffreys is liable for all torts committed by his subordinate Defendants and employees while employed at Menard, pursuant to the doctrine of respondeat superior. Jeffreys is additionally responsible for the policies and practicies of IDOC and Menard (But not limited to). Jeffreys is sued in his official and individual capacities.

7. Defendant, Anthony Wills, ("Wills") was the Chief Executive Officer ("CAO") at Menard and was employed by IDOC at all relevant in this complaint. Wills is responsible for supervising, training, and disciplining officers, employees and agents at Menard. Wills is responsible for all torts committed by his officers, employees, and agents at Menard pursuant to the doctrine of respondeat superior. Wills is additionally responsible for the policies and practicies at Menard. Wills is sued in his official and individual capacities.

8. Defendants John/Jane Does #1 and #2 are Assistant Wardens at Menard on the dates 03/01/2023, throughout 08/01/25, at all relevant times in this complaint, are employed by Menard. John/Jane Does #1, #2 are both responsible for supervising, training, and disciplining officers, employees, and agents of Menard. John/Jane Does #1, #2 are sued in individual and official capacities.

9. Defendant, John/Jane Doe #3, was the Medical Director at Menard on the dates 03/01/2023, throughout 08/01/2025, at all relevant times in this complaint was employed by Menard. John/Jane Doe #3 is responsible for medical treatment at the Healthcare Unit ("HCU") at Menard. John/Jane Doe #3 is sued in his/her official and individual capacities.

10. Defendant, Angela Crain, ("Crain") is/was the Healthcare Unit Administrator ("HCUA") at Menard on the dates 03/01/2023, throughout 08/01/2025, at all relevant times in this complaint was employed by Menard. Crain is responsible for managment of the HCU at Menard. She is sued in her official and individual capacities.

11. Defendant, Connie Dolce, ("Dolce") is/was the Director of Nursing ("DON") at Menard at all relevant times in this complaint is/was employed by Menard. Dolce is responsible for supervising and training the nurses at the HCU at Menard. Dolce is sued in her official and individual capacities.

12. Defendant, John/Jane Doe #4, is/was the Medical Furlough Officer ("MFO") at Menard on the dates 03/01/2023, throughout 09/01/2025, at all relevant times in this complaint John/Jane Doe #4 is/was employed by Menard he/she is sued in his/her official capacities.

13. Defendant Micheal Muldenhauer ("Muldenhauer") is a Nurse Practitioner ("NP") at Menard at all relevant times in this complaint. Muldenhauer is employed by Menard. He is sued in his official and individual capacities.

14. Defendants, Unidentified John/Jane Does et al., are/were employees of Menard on the dates 03/01/2025, through but 08/03/2025, at all relevant times in this complaint they are sued in their individual and official capacities.

## COLOR OF STATE LAW/JOINDER

15. All the Defendants' have acted, and/or continue to act, under color of State Law at all times relevant to this complaint. This multi-claim, multi-defendant complaint is properly joined where the claims did arise from the same factual situation, where the claims against Defendants' did also arise out of the same transaction, occurrence, or series of transactions or occurrences, and where a common question of law or fact does exist between the Defendants'.

## PREVIOUS LAWSUITS

16. 1. William Johnson v. Rob Jeffreys et al Case No. 21-CV-779-NJR dismissed

2. William Johnson v. Kim Foxx Case No. 22-CV-4223 dismissed strike

3. William Johnson v. Anthony Wills case No. 24-CV-02794 pending

## STATEMENT OF FACTS

17. This is a verified civil rights complaints filed by William Johnson pro se, a State of Illinois prisoner housed at Menard under 42 U.S.C. Section 1983, alleging United States Constitutional Rights violations under the 8th and 14th Amendments.

18. Johnson, is a long term general population prisoner currently being housed at Menard C.C. a Maximum Security Facility.

19. The gravamen of this multi-claim complaint is that Johnson has been conspicuosly denied rights and privilages, subjected to cruel and unusual punishment (and other such constitutional and State law deprivations visited pursuant to I.D.O.C. and Wexford's "customs") due to Defendant's failure to protect, deliberate indifference to Johnson's serious medical

needs, denial of due process and equal treatment under the law, and harassment and retaliation as a direct result of Defendant's actions and other as below described.

## DENIAL OF MEDICAL CARE

20. On 03/23/23, Johnson slammed his right thumb ("R thumb") and hand in his celldoor fracturing it in multiple places. It became painful, swollen, discolored, and immobile within a couple hours.

21. On 03/23/23, Johnson submitted written request slips to the HCU and sickcall concerning his fractured, swollen, painfull discolored, and immobile R thumb and hand, to no avail. Johnson was unable to sleep due to the excruciating pain he was in. When Johnson was able to fall asleep it was only temporary as soon as he moved his R thumb and hand the sharp pain from his injury would immediately wake him up. By the next day Johnson's R thumb was twice its normal size and thobbing with pain.

22. On 03/25/23, Johnson submitted more written request slips to the HCU and sickcall concerning his fractured, swollen, painfull, and possibly infected R thumb and hand. Johnson was not called to sickcall and never received an answer from the HCU. Johnson's request slips were addressed to Defendants Wexford, John/Jane Doe #3, Crain, Dolce, and Muldenhauer.

23. On or about 03/26/23, Johnson stopped a male nurse walking past his cell during medication rounds. Johnson showed him his fractured, swollen, painfull, discolored pus filled R thumb and hand. The nurse told Johnson that he would put Johnson in to see the doctor at the HCU, but he did not. Johnson was not called to the HCU to see a doctor or anyone else.

24. On 03/26/23, Johnson submitted written request slips to Defendants: Wills, John/Jane Does #1, #2 concerning the denial of medical care for Johnson's known fractured, painfull, swollen, discolored, and possibly infected R thumb and hand by the HCU. Defendants: Wexford,

John/Jane Doe#3, Crain, Dolce, and Muldenhaver. Johnson never received an answer to or acknowledgement of his written request slips.

25. On 03/27/23, Johnson mailed letters to Defendants: Wexford and Jeffreys concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not providing any medical treatment for Johnson's known fractured, painfull, swollen, and possibly infected R thumb and hand by Defendants: Wills, John/Jane Does#1, #2, #3, Crain, Muldenhaver, and Dolce and unidentified John/Jane Does et al., at Menard (But not limited to).

26. On 03/27/23, Johnson submitted an Emergency Grievance concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not providing any medical care at all for his known fractured painfull, swollen, discolored pus filled, and possibly infected R thumb and hand by Defendants: Crain, Dolce, John/Jane Doe#3, Muldenhaver John/Jane Does#1, #2 and

unidentified John/Jane Does et al., Defendants: Wexford, Jeffreys, and Wills failure to correct known systemic deficies in the healthcare system, train supervise, discipline, and correct their subordinate Defendants: John/Jane Does #1, #2, #3, Crain, Muldenhauer, Dolce, and unidentified John/Jane Does et al., when made aware of above said issues. Johnson never received an answer to his grievance.

27. Johnson submitted written request slips everday from 03/28/23, throughout 04/01/23, to Defendants: Wills, John/Jane Does #1, #2, #3 Crain, Muldenhauer, Wexford, and Dolce concerning the denial of medical care and deliberately indifferent to Johnson's serious medical needs by Defendants: Muldenhauer, Crain, John/Jane Doe #3, Dolce, and unidentified John/Jane Does et al., All of the above named Defendants (But not limited to) were all aware of Johnson's fractured, painfull, swollen, discolored, and possibly infected R thumb and hand; and did nothing to address them. Johnson never received a response to any of his request slips.

28. On 04/01/23, Johnson went on a call pass and on his way back to his cell Johnson stopped the cellhouse Sgt. and showed him Johnson's fractured, swollen, painfull, discolored, pusfilled, infected, and smelly R thumb and hand. At the sight and smell of Johnson's injury the Sgt. immediately ordered an officer to take Johnson straight to the HCU.

29. Once at the HCU Johnson was examined by Defendant Muldenhauer who acknowledged the fracture and infection of Johnson's R thumb and hand. Johnson informed him of the Emergency grievance, numerous request slips, letters, how painfull it was, and his inability to sleep or use his R hand. Muldenhauer gave Johnson antibiotics and sent him back to the cellhouse without cleaning, bandaging, splinting, or pain medication for Johnson's R thumb and hand. Muldenhauer refused to send him to an outside hospital for medical care.

30. On 04/02/23, Johnson went back to the HCU to receive more antibiotics for his fractured R thumb and hand. Johnson's R thumb and hand was still not cleaned or splinted, or bandaged,

or treated with pain medication by the HCU. Johnson was sent back to the cellhouse. The HCU refused to send Johnson to an outside hospital for medical care.

31. On 04/03/23, Johnson went to the Emergency Room at Southern Illinois University Hospital to have an MRI of his R thumb and hand. The procedure confirmed that Johnson's R thumb and hand was fractured in multiple places and severly infected. Johnson was given a tetanus shot and sent back to Menard; his wounded R thumb and hand was not treated with pain medication, cleaned or splinted at the hospital. Even after Johnson requested that the ER Doctor do so before Johnson was discharged from the hospital. The Doctor informed Johnson that the injuries to his R thumb and hand require a surgeon to clean, suture and splint them. He was not qualified to do so.

32. Johnson returned to Menard later that night; he was still unable to sleep throughout the night without waking up due to the pain from his injury, no splint or pain medication.

33. Johnson was experiencing sharp excruciating pain when moving his R thumb and hand and a throbbing pain when it was still. The untreated injury significantly affected both Johnson's sleep pattern and daily activities. Johnson is unable to perform simple tasks such as tying shoes, getting dressed, bathing, brushing his teeth, combing his hair, shaving, washing clothes, eating, and taking his medications etc.

Johnson was right handed now he has to learn to do everything with his left hand including writing. Johnson felt powerless to do anything to improve his situation; the Defendants have done nothing to affirmatively address his serious medical needs, even when made aware of them. Almost two weeks have gone by and Johnson still has not received basic medical care for his known injuries.

Johnson's R thumb and hand are immobile, swollen to twice its normal size, severly infected, discolored and smells terrible and there is nothing he can do about it. In addition to the pain Johnson is worried that he will lose his R thumb, if not the

entire hand to infection and then amputation by the actions or inactions of Defendants. The stress, embarrassment, humiliation, pain, fear, and despair sent Johnson on a emotional roller coaster that caused Johnson severe emotional distress because of the Defendants conduct as described in this complaint (But not limited to).

34. On 04/07/23, Johnson was sent to Barnes Hospital for treatment. Once there Johnson's R thumb and hand were x-rayed, and treated by an Orthopedic Surgeon who removed Johnson's R thumb nail, cleaned the infected area, sutured lacerations, temporarily splinted Johnson's fractured R thumb and hand and provided him with pain medication. Johnson was discharged with a return date of 04/14/23, for a follow up appointment to return to Barnes the next week. Johnson returned to Menard.

35. On 04/14/23, Johnson returned to Barnes Hospital to have his R thumb and hand evaluated, placed in a cast and set a date

for surgery. Johnson's R thumb and hand were placed in a cast, a surgery date for his R thumb and hand was set for 04/28/23, two weeks from the date Johnson's R thumb and hand were placed in a cast. Johnson was sent back to Menard and moved to the 3rd floor of the HCU building.

36. On 04/28/23, Johnson was not taken back to Barnes Hospital for his surgery; nor was Johnson given a reason why his surgical appointment was not honored.

37. On 04/30/23, Johnson sent written request slips to Defendants: John/Jane Does #3, #4, Muldenhaver, Dolce, and Crain concerning Johnson's missed surgical appointment at Barnes Hospital. Johnson never received an answer to his request slips from any of the above named Defendants.

38. On 04/30/23, Johnson sent letters via Registered U.S. Mail to Defendants: Wexford, Jeffreys, and Wills concerning the missed surgery, the pain and suffering he was experiencing as a result of the missed

surgery appointment on 04/28/23, the lack of response from Defendants: John/Jane Does #3, #4 Crain, Muldenhauer, Dolce to Johnson's written request slips. Johnson never received a response from Defendants: Wexford, Jeffreys, or Wills to his letters.

39. On 05/09/23, Johnson submitted an Emergency Grievance concerning his missed surgery, the pain and suffering he was experiencing as a result of the missed surgery on 04/28/23, the lack of response from Defendants: John/Jane Does #3, #4 Muldenhauer, Crain, and Dolce to Johnson's written request slips, and the denial of medical care and deliberate indifference to Johnson's serious medical needs concerning his known fractured painfull, swollen, discolored, and infected R thumb and hand. The following Defendants were also included in the grievance: Wexford, Wills, Jeffreys John/Jane Dolce et al., Johnson never received an answer to his grievance.

40. On or about 05/16/23, Johnson spoke to Muldenhauer as he was walking by Johnson's cells. Johnson informed Defendant

Muldenhauer about his missed surgical appointment. Muldenhauer told Johnson that he had nothing to do with that and Johnson should file another grievance; if he didn't like it.

41. On or about 05/18/23, an unknown nurse told Johnson that they ("HCU") lost his surgical appointment date that is why he was not taken to Barnes Hospital on 04/28/23,.

42. On 06/26/23, Johnson was sent to Barnes Barnes Hospital to have his cast removed, Dr. Fox informed Johnson that because he missed his surgical appointment, on 04/28/23, and left his cast on for 10 weeks, 8 weeks beyond his appointment. Johnson's R thumb and hand healed incorrectly and would never be normal again.

Dr. Fox went on to say that she could not operate now because the bones formed in place and the veins and nerves formed new connections. The only thing to do now was to order an X-ray and prescribe physical therapy ("PT") immediately to save and restore as much function and usage as possible.

Dr. Fox also informed Johnson that he would always have pain and limited mobility because of the way it healed without surgery. And he would experience arthritis and it would get worse as he aged. Johnson was sent back to Menard and moved to the West Cellhouse.

43. Everyday from 06/27/23, throughout 07/20/23, Johnson sent written request slips to Defendants: Wills, Wexford, Wills, John/Jane Does #1, #2, #3, Muldenhaver, Crain, and Dolce concerning his need for immediate PT as prescribed by Dr. Fox on 06/26/23,. Johnson never received a response or acknowledgement from any of the above named Defendants to his written request slips.

44. On or about 06/29/23, Johnson mailed letters by Registered U.S. Mail to Defendants: Wexford, Jeffreys, and Wills. Concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not providing any PT immediately

after Johnson's cast was removed on 06/26/23, for Johnson's known fractured, swollen, and painfull R thumb and hand as Dr. Fox prescribed for Johnson. By Defendants: John/Jane Does #1, #2, #3, Crain, Dolce, Muldenhauer, and unidentified John/Jane Does et al., Johnson never received an answer or acknowlegdement of his letters by Defendants: Wexford, Wills, or Jeffreys.

45. On or about 07/17/23, Johnson filed another Emergency Grievance concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by Defendants: Wexford, Jeffreys, Wills, John/Jane Does #1, #2, #3, Crain, and unidentified John/Jane Does et al., by denying Johnson any PT immediately after his cast was removed (But not limited to). Wills deemed Johnson's grievance an emergency. On 07/26/23, Johnson went to PT for the first time since his cast was removed one month before.

46. On or about 08/10/23, Johnson was removed from the PT callline through no fault of his

own; according to c/o Mulholland.

47. On 08/11/23, Johnson file another Emergency Grievance concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by Defendants: John/Jane Does #1, #2, #3, Crain, Dolce, Muldenhauer and unidentified John/Jane Does et al., by denying Johnson access to PT for Johnson's known fractured, painfull, and swollen R thumb and hand as ordered by Dr. Fox. Defendants: Wills, Wexford and Jeffreys failure to correct known systemic deficiences in the health care system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of above said issues. Johnson never received an answer to his grievance.

48. On 08/16/23, Johnson was placed back on the PT call line and he went back to PT.

49. On 08/30/23, PT was cancelled and on 08/31/23, Johnson was removed from the PT call line again through no fault of his own according to c/o Lozene.

50. On 09/06/23, Johnson handed Counselor Pierce an Emergency Grievance concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by Defendants: John/Jane Does #1, #2, #3, Crain, Muldenhauer, Dolce, and unidentified John/Jane Does et al., by denying Johnson access to PT for Johnson's known fractured, painfull and swollen R thumb and hand as ordered by Dr. Fox. Defendants: Wexford, Wills, and Jeffreys failure to correct known systemic deficiences in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of above said issues. Johnson never received an answer to his grievance.

51. On 09/13/23, Johnson went back to PT after being added back to the PT callline again. Johnson was examined by the PT staff who recorded that Johnson's R thumb and hand were still painfull, swollen and immobile. And discontinued Johnson's PT by removing him from the PT callline again.

52. On 09/13/23, Johnson mailed Defendants: Wexford, Wills, and Jeffreys letters by First Class U.S. Mail concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not providing Johnson with immediate PT after his cast was removed as ordered by Dr. Fox. And then kept removing Johnson from PT once he started PT for; his known fractured, swollen, and painfull R thumb and hand. By Defendants: John/Jane Does #1, #2, #3, Crain, Dolce, Muldenhauer, and unidentified John/Jane Does et al.,. Johnson never received an answer or acknowledgment from any of the above named Defendants to his letters.

53. On 10/05/23, Johnson went to sick call to meet with NP Dearmond concerning his still, painfull, and swollen, R thumb and hand and his removal from the PT call line again. NP Dearmond scheduled Johnson to go back to Barnes Hospital for re evaluation concerning Johnson's progress.

54. On 11/14/23, Johnson was sent to Barnes Hospital for reevaluation of Johnson's R thumb

and hand. The NP told Johnson that the damage to his hand may not be reversible due to the cast being on way too long (10 weeks) which was the major contributor to the damage, pain, and suffering Johnson was experiencing.

The NP prescribed new treatments (brace and exercise) and medications for Johnson. And to have Johnson return in 30-days to reevaluate with Dr. Fox; Johnson was sent back to Menard.

55. On 11/16/23, Johnson was moved to the North Lowers ("NL") Cellhouse cell 209 for the treatment and brace. Johnson was not given the prescribed medications Voltaren or Meloxicam ordered by Dr. Fox. Nor did Johnson received any substitute medications in their place.

56. On or about 11/20/23, Johnson sent written request slips via the institutional mail to the HCU and Defendants: John/Jane Doe #3, Crain, Muldenhauer, Dolce, and Wexford concerning the lack of prescription medications Voltaren or Meloxicam ordered by Dr. Fox.

Johnson never received an answer from any of the above named Defendants to his requests.

57. On or about 11/20/23, Johnson mailed letters by Registered U.S. Mail to Defendants: Wexford, Jeffreys, and Wills concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not providing either of the medications prescribed by Dr. Fox or any other medications in their place, for Johnson's known fractured, swollen, and painfull R thumb and hand. By Defendants: John/Jane Does #1, #2, #3 Crain, Dolce, Muldenhauer and unidentified John/Jane Does et al., Johnson never received an answer to his letters from the above named Defendants (But not limited to).

58. On 12/03/23, Johnson received the first of the two medications Meloxicam; but not Voltaren.

59. On or about 12/14/23, Johnson went back to Barnes Hospital to meet with Dr. Fox for a reevaluation of the new treatment and medications. Johnson informed Dr. Fox that

he has started the new treatment with the brace and only one of the two medications that She prescribed on 11/14/23,. And that the PT at Menard was inconsistant and unproductive at best and that his R thumb and hand were still swollen, immobile, and painfull. Johnson's brace was fine tuned and Dr. Fox informed Johnson that She would represcribe the Voltaren cream, and She made another appointment to see Johnson in 60-days for a follow up on or about 02/14/23, Johnson returned to Menard.

60. Johnson's PT sessions were on and off from 12/14/23, through 02/02/24, on 02/02/24, the last day of Johnsons PT all further PT sessions were cancelled through no fault of Johnsons.

61. On 02/04/24, Johnson sent written request slips to Defendants: Wexford, Wills, Dolce, Crain, Muldenhauer and John/Jane Does #1, #2, #3 concerning the cancellation of his PT again and not receiving his Volteran medication as prescribed by Dr. Fox. Johnson never received an answer to any of his request slips.

62. On 02/04/24, Johnson mailed letters by Registered U.S. Mail to Defendants: Wexford, Hughes, and Wills concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by removing Johnson from his Dr. Fox ordered PT through no fault of his own, not replacing it with anyother treatment and not providing Johnson with his Dr. Fox prescribed medications or anyother medications in their place. For Johnson's known fractured, swollen, and painfull R thumb and hand. By Defendants: John/Jane Does #1, #2, #3, #4, Crain, Muldenhauer, Dolce, and unidentified John/Jane Does et al., Johnson never received an answer to his letters from the above named Defendants (But not limited to).

63. On 02/13/24, Johnson filed another Emergency Grievance concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by Defendants: Wexford, Hughes, Wills, John/Jane Does #1, #2, #3, #4, Crain, Dolce, Muldenhauer, and unidentified John/Jane Does et al., by not sending Johnson to his scheduled followup appointment with Dr. Fox at Barnes Hospital on the date of

02/13/24, his cancelled PT and not providing Johnson with his prescribed medication or anyother medication(s) in its place for Johnson's known fractured, swollen, and painfull R thumb and hand. And Defendants: Wexford, Wills, and Hughes failure to correct known systemic deficiences in the healthcare system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of above said issues. Johnson never received an answer to his grievance.

64. On 03/18/24, Johnson received his Voltaren medication more than 5 months after Dr. Fox prescribed it for him. Johnsons stress level remains high concerning his inability to get the necessary medical care from the named Defendants for almost a year after his injury. Because of his injury he is still unable to sleep through the night and perform simple tasks: brushing his teeth, buttoning his shirt or tying his shoes etc.
All the above factors contribute to Johnson's shame, humiliation, fear, and depression over the actions or inactions of the

named Defendants as described in this complaint.

65. On or about 03/29/24, Johnson missed another follow up appointment with Dr. Fox at Barnes Hospital as scheduled.

66. On 03/30/24, Johnson mailed letters by Registered U.S. Mail to Defendants: Wexford, Hughes, and Will concerning the denial of medical care and deliberate indifference to Johnson's serious medical needs by not sending Johnson to scheduled followup appointments with Dr. Fox at Barnes Hospital on 03/29/24, and cancelling Johnson's PT through no fault of his own by Defendants: John/Jane Does #1, #2, #3, #4, Muldenhauer, Crain, Dolce, and unidentified John/Jane Does et al., for Johnson's known fractured, swollen, and painfull R thumb and hand. And Defendants: Wills, Wexford, and Hughes failure to correct known systemic deficiences in the health care system, train, supervise, discipline, and correct their subordinate Defendants listed above (But not limited to) when made aware of above said issues. Johnson never received an answer

to his letter from any of the above said Defendants.

67. On 05/16/24, Johnson went to a medical appointment with Dr. Fox at Barnes Hospital. Dr. Fox ordered x-rays and performed a series of tests on Johnson's R thumb and hand. After the tests Dr. Fox informed Johnson that the damage to his R thumb and hand was not reversible and would only get worse with age as arthritis set in. She also informed him that the major contributor to his pain, swelling, suffering, and immobility was that the cast remained on for too long and he missed his surgical date on 04/28/23. Lastly, Dr. Fox told Johnson that the delay in receiving PT, medications, and inconsistancy in PT resulted in the current state of his R thumb and hand. Johnson was sent back to Menard.

68. On 07/02/24, Johnson was added back to the PT callline.

69. On 07/23/24, Johnson was removed from the PT callline, through no fault of his own.

70. On 09/23/24, Johnson went to the HCU for a PT examination/evaluation by staff. No further treatment was offered or given to Johnson.

71. Since this injury Johnson has suffered the loss of mobility, strength, feeling, sensitivity, dexterity and is in constant pain.

72. On information and belief, when a prisoner files a grievance; it reaches the administration institutional authorities, or staff responsible for investigating and dealing with the grievances; even if the grievance is never answered.

73. On information and belief, when a prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns.

74. On information and belief when a prisoner places a written request slip in the institutional mail it reaches the intended prison official, department or office it was addressed to;

whether or not he receives a response.

75. Johnson was denied medical care for 10-days before being taken to the HCU, and 03-days after that before Johnson went to an outside hospital, and 04-days after that before, Johnson was taken to Barnes Hospital to finally have his known fractured, swollen, painfull, discolored, smelly, pus filled, infected R thumb and hand cleaned, sutured R thumb nail removed and fractured splinted, and given pain medication.

76. Johnson was denied medical care when he was not taken to his scheduled surgery, or provided any other treatment for his known fractured, swollen, and painfull R thumb and hand.

77. Johnson was denied medical care when his cast was removed and he did not receive immediate PT and medications or any other treatment as ordered by Dr. Fox for his known serious medical needs.

78. On information and belief that when a prisoner places a letter in the cell bars to be mailed out by the U.S. Postal Services it reaches its destination whether or not he receives an answer. Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988) and Ill. S.Ct. Rule 12(c).

79. The conduct of the Defendants was objectively unreasonable and was untaken intentionally with malice willfulness and deliberate indifference.

80. Johnson's injuries and the violations of his Constitutional Rights were directly proximately caused by the policies and practices of Defendants which were the moving forces of the violations.

81. Defendant Wexford was responsible for inmates State wide medical care generally, staffing, training of staff, scheduling staff, payment of medical costs, and the general management of the health care system for all the correctional facilities in IDOC.

82. Defendants John/Jane Does #3 #4, #5, Muldenhauer, Dolce, and Crain are responsible for medical care generally at Menard and for arranging for specialized medical care outside the prison.

83. Defendants Jeffreys and Hughes were responsible for the IDOC, the State agency that manages the Correctional facilities within the State of Illinois. And Defendants Hughes and Jeffreys had the ultimate responsibility for the promulgation and implementation of IDOC policies and practices and of the management of IDOC.

84. Defendants John/Jane Doe #1, #2 are responsible for arranging for specialized care outside the prison and pragrams inside the prison.

85. Defendant Wills is responsible for the execution of policies, procedures, and practices at Menard including the supervision, training, discipline of employees, and inmates and management of HCU (But not limited to).

86. Defendant John/Jane Doe #4 is responsible for the scheduling and cancellation of medical appointments at Menard.

## CLAIMS FOR RELIEF

### COUNT I

### 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

87. Johnson incorporates each paragraph of this Complaint as if fully restated here.

88. In the manner described morefully above the Defendants Wexford, Hughes, Wills, Jeffreys, John/Jane Does #1, #2, #3, #4, Crain, Dolce, Muldenhauer, and unidentified John/Jane Does et al., acting as supervisors, caregivers, and employees etc. (But not limited to), individually, jointly and in conspiracy with one another, as well as under the color of law and within the scope

of their employment were deliberately indifferent to Johnson's serious medical needs inviolation of his rights secured by the 8th and 14th Amendments.

89. As desribed more fully above Defendants' were deliberately indifferant to Johnson's serious medical needs when made aware of them in person, medical records, request slips, grievances, and letters (But not limited to).

90. As a result of Defendant's deliberate indifference in this count Johnson suffered injury, great mental anguish, humiliation degradation, physical, and emotional pain and suffering, and other grievous and continuing injuries and damages as setforth above.

91. Johnson's injuries were caused and exacerbated by the policies, practices, and customs of Defendants Wexford, Hughes, Jeffreys, and Wills.

92. At all times relevant to the events described in this Complaint and for a period of time there to the Defendants referenced in the preceeding paragraph pramulgated rules, regulations, polices, and procedures for the conduct denying inmates access to medical care for their serious medical needs. Inaddition, the Defendants referenced in the preceding paragraph promulgated rules, regulations, policies and procedures for the training and supervision of employees of Wexford, IDOC and Menard (But not limited to). Moreover, the Defendants referenced in the preceding paragraph provided training and training materials to employees agents, officers and others on the subject of medical policies for the treatment of inmates in the healthcare system. The Defendants and their subordinate Defendants adopted these rules, regulations, policies and procedures such that they became the policies and procedures of Wexford, IDOC, and Menard (But not limited to). These rules, regulations, polices, and procedures were implemented by

employees and agents of Wexford, IDOC, and Menard who were responsible for denying Johnson medical care and who were deliberately indifferent to his serious medical needs when made aware of them.

93. In addition, at all times relevant to the events described in this complaint and for a period of time prior thereto, Defendants Wexford, Hughes, Jeffreys, and Wills had notice of a widespread practice by employees and agents for which inmates such as Johnson were denied medical care for their serious medical needs by said employees and agents (But not limited to).

94. Specifically, at all relevant times and for a period of time prior thereto there existed a widespread practice among the subordinate Defendants, employees, and agents: John/Jane Does #1, #2, #3, #4, Crain, Dolce, Muldenhauer, and unidentified John/Jane Does et al., of Defendants: Wexford, Hughes, Wills, and Jeffreys to deny medical care to

and deliberately indifferent of Johnson's serious medical needs and other similary situated individuals. And supevisors with knowledge of above said widespread behavior, policies, and customs (But not limited to), did not properly supervise or discipline employees, agents, or subordinate Defendants, so that the coercive behavior continued unchecked.

95. These widespread practices, were allowed to flourish because the leaders, supervisors, and policy makers of Defendants: Wexford, Wills, Jeffreys, and Hughes directly encouraged and were thereby the moving force behind the very type of misconduct and deliberate indifference at issue by failing to adequately train, supervise, and control their subordinate Defendants, employees, or agents on proper medical care and treatment and by failing to adequately punish and discipline prior instances of similar misconduct and deliberate indifferance, thus directly encouraging future abuses such as those affecting Johnson.

96. The failure of Defendants Wexford, John/Jane Doe #3, Crain, Muldenhauer, Dolce, and unidentified John/Jane Does et al., to provide Johnson with timely emergency care, pain medication, or to send Johnson to an outside hospital capable of providing medical care for Johnson's known fractured, swollen, discolored, pus filled infected, and smelly R thumb and hand. Constitutes deliberate indifference to Johnson's serious medical needs in violation of the 8th and 14th Amendments to the U.S. Constitution.

97. The failure of Defendants Wexford, John/Jane Does #1, #2, #3, #4, Muldenhauer, Crain, Dolce, and unidentified John/Jane Does et al., to send Johnson to his known scheduled surgical appointment on 04/28/23, for his known fractured, swollen, painfull, and infected R thumb and hand; constitutes deliberate indifference to Johnson's serious medical needs in violation of the 8th and 14th Amendments of the U.S. Constitution.

198. The failure of Defendants Wexford, John/Jane Does #1, #2, #3, #4, Muldenhauer, Dolce, Crain, and unidentified John/Jane Does et al., to provide for the removal of Johnson's cast, follow up examination, pain medication, and treatment for his fractured R thumb and hand and immediate consistent PT for his R thumb and hand constitutes deliberate indifference to Johnson's serious medical needs in violation of the 8th and 14th Amendments to the U.S. Constitution

99. The failure of Defendants Wexford, Jeffreys, Hughes, Wills, John/Jane Does #1, #2, #3, #4, Muldenhauer, Crain, Dolce and unidentified John/Jane Does et al., to routinely and systemically and properly obtain and maintain medical records to avoid the events contained in this complaint constitutes deliberate indifference to Johnson's serious medical needs in violation of the 8th and 14th Amendments of the U.S. Constitution.

100. The failure of Defendants Wexford, Wills, Jeffreys and Hughes failure to correct known longstanding, systemic deficies in the Healthcare system, train, supervise, discipline, and correct their subordinates John/Jane Does #1, #2 #3, #4, Muldenhauer, Crain, Dolce, and unidentified John/Jane Does et al., when made aware of above said issues which deprived Johnson of his right to be free from cruel and unusual punishment as secured to him under the 8th and 14th Amendments to the U.S. Constitution and has resulted in actual physical and medical harm to Johnson.

101. The above widespread practices, so well settled as to constitute de facto policy of Wexford, Hughes, Jeffreys, Wills, IDOC, and Menard and their subordinate Defendants, employees, and agents; were able to exist and thrive because policy makers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

102. In addition, the misconduct and deliberate indifference described in this Count was undertaken pursuant to the policy and practice of Defendants: Wexford, Hughes, Jeffreys, Wills, IDOC, and Menard in that the constitutional violations committed against Johnson were committed with the knowledge or approval of persons with final policymaking authority for the IDOC, Wexford, Menard, Jeffreys, Hughes, and Wills and their subordinate Defendants or were actually committed by persons with such final policy making authority.

103. The policies, practices, and customs setforth above have resulted in numerous well-publicized lawsuits based on the deliberate indifference to inmates at IDOC, serious medical needs, including the deliberate indifference issues in this Complaint in which Johnson was denied medical care for his serious medical needs by the above said Defendants (But not limited to).

104. Johnson's injuries were caused from and exacerbated by officers, employees, agents, and subordinates Defendants of Wexford, Hughes, Jeffreys, Wills, IDOC, and Menard; including but not limited to the individually named Defendants, who acted pursuant to the policies, practices and customs set forth above in engaging in the deliberate indifference and misconduct described in this Count.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS STATE LAW CLAIM

105. Johnson incorporates each paragraph of this Complaint as if fully restated here.

106. The actions, omissions, and conduct of the Defendants and their subordinate Defendants as set forth above were extreme and outrageous. These actions or inactions were rooted in an abuse of

power and authority and deliberate indifference, and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Johnson, as is more fully alleged above.

107. As a direct and proximate result of the Defendants and their subordinate Defendants' actions, Johnson suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

COUNT III

RESPONDEAT SUPERIOR
STATE LAW CLAIM

108. Johnson incorporates each paragraph of this Complaint as if fully restated here.

109. While committing the deliberate

indifference and misconduct alleged in the preceding paragraphs, the Defendants were employees, members, agents, and subordinate Defendants of Wexford, Hughes, Jeffreys, Wills, IDOC, and Menard, acting at all relevant times within the scope of their employment.

110. Defendant Wexford is liable as principle for all torts committed by its agents, employees, members, and subordinate Defendants.

111. Defendant Hughes is liable as principal for all torts committed by her agents, employees, members, and subordinate Defendants.

112. Defendant Jeffreys is liable as principal for all torts committed by his agents, employees, members, and subordinate Defendants.

113. Defendant Wills is liable as principal for all torts committed by his agents, employees, members, and subordinate Defendants.

COUNT IV

INDEMNIFICATION
STATE LAW CLAIM

114. Johnson incorporates each paragraph of this Complaint as if fully restated here.

115. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

116. The Defendants were employees, members, agents, and subordinate Defendants of Wexford, Hughes, Jeffreys, Wills, IDOC and Menard, acting at all relevant times within the scope of their employment in committing the misconduct and deliberate indifference described herein.

117. Wexford is obligated by Illinois statute to pay any judgment entered against their employees, agents, members, and subordinate Defendants in their individual and official capacities.

118. Jeffreys is obligated by Illinois statute to pay any judgment entered against his employees, agents, members, and subordinate Defendants in their official and individual capacities.

119. Hughes is obligated by Illinois statute to pay any judgment entered against her employees, agents, members, and subordinate Defendants in their individual and official capacities.

120. Wills is obligated by Illinois statute to pay any judgment entered against his employees, agents, member, and subordinate Defendants in their individual and official capacities.

# REQUESTED RELIEF

WHEREFORE, Johnson, requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:
1. The deliberate indifference to and the denial of medical care for Johnson's serious medical needs by Defendants Wexford, Jeffreys, Hughes, Wills, John/Jane Does #1, #2, #3, #4, Muldenhauer, Dolce, Crain, and unidentified John/Jane Does et al., violated Johnson's Constitutional Rights under the 8th and 14th Amendments to the U.S. Constitution.

B. Award compensatory damages in the amounts:

1. $200,000. jointly and severally against Defendants Wexford, Hughes, Jeffreys, Wills, John/Jane Doe #1, #2, #3, #4, Dolce, Crain, Muldenhauer, and unidentified John/Jane Does et al., for the physical and emotional injuries sustained as a result of Johnson being denied medical care.

2. $250,000. jointly and severally against

Defendants Wexford, Hughes, Jeffreys, Wills, John/Jane Does #1, #2, #3, #4, Dolce, Crain, Muldenhauer, and unidentified John/Jane Does et al., as a result of their failure to provide immediate PT and medications for Johnsons known injury.

3. $100,000. jointly and severally against Defendants Wexford, Hughes, Jeffreys, Wills, John/Jane Does #1, #2, #3, #4, Dolce, Crain, Muldenhauer, and unidentified John/Jane Does et al., as a result of their failure to prevent the permanent disability and disfigurement to Johnson's R thumb and hand by their deliberate indifference to and their denial of medical care for Johnson's serious medical needs.

C. Award punitive damages in the following amounts:

1. $50.000 each against Defendants Wexford, Jeffreys, Hughes, and Wills.
2. $25.000 each against Defendants John/Jane Does #1, #2, #3 #4, Crain, Muldenhauer, Dolce, and unidentified John/Jane Does el at.,

D. Grant such relief as it may appear Johnson is entitled.

03 June 2026

Respectfully submitted

William Johnson pro se
William Johnson #M01525
P.O. Box 1000
Menard, Il 62259

STATE OF ILLINOIS }
COUNTY OF RANDOLPH } SS

# AFFIDAVIT

I, WILLIAM JOHNSON, BEING FIRST DULY SWORN ON OATH DEPOSES AND SAYS THE FOLLOWING:

1. THAT ON OR ABOUT THE FOLLOWING DATES: 03/23/23, 03/25/23, 03/26/23, 03/28/23, 03/29/23, 03/30/23, 03/31/23, 04/01/23, 04/30/23, 06/27/23, 06/27/23, 06/28/23, 06/29/23, 06/30/23, 07/01/23, 07/02/23, 07/03/23/, 07/04/23, 07/05/23, 07/06/23, 07/07/23, 07/08/23, 07/09/23, 07/10/23, 07/11/23, 07/12/23, 07/13/23, 07/14/23, 07/15/23, 07/16/23, 07/17/23, 07/18/23, 07/19/20, 07/20/23, 11/20/23, 02/04/24 I SENT WRITTEN REQUEST SLIPS VIA THE INSTITUTIONAL MAIL AT MENARD C.C. TO THE HCU/SICKCALL AND DEFENDANTS: WEXFORD, JOHN/JANE DOES #1, #2, #3 #4, WILLS, CRAIN, MULDENHAUER, AND DOLCE

2. THAT ON OR ABOUT THE FOLLOWING DATES: 03/27/23, 04/30/23, 06/29/23, 11/20/23, 02/04/24 AND 03/30/24, I MAILED LETTERS TO DEFENDANTS: WEXFORD, HUGHES, JEFFREYS, AND WILLS VIA REGISTERED 1ST CLASS U.S. POSTAL SERVICE.

3. THAT ON OR ABOUT THE FOLLOWING DATES: 03/27/23,

05/09/23, 07/17/23, 08/11/23, 09/06/23, AND 02/13/24, I SUBMITTED GRIEVANCES THROUGH THE IDOC AND MENARD C.C. GRIEVANCE PROCESS.

4. THE REQUEST SLIPS, LETTERS, AND GRIEVANCES SERVED TO ALERT, INFORM, AND REQUEST HELP FROM THE ABOVE SAID DEFENDANTS CONCERNING THE DELIBERATE INDIFFERENCE TO AND THE DENIAL OF MEDICAL CARE FOR JOHNSON'S SERIOUS MEDICAL NEEDS. THE ABOVE LETTERS AND GRIEVANCES ALSO INFORMED THE ABOVE SAID INDIVIDUALS THAT THE GRIEVANCE PROCESS IS EFFECTIVELY NON-EXISTANT AND CONTINUES TO BE SO AS OF THE WRITING OF THIS AFFIDAVIT.

SUBSCRIBED AND SWORN TO BEFORE ME THIS 5 DAY OF September, 2025

William Johnson
AFFIANT

Trenton Lee Wagner
NOTARY PUBLIC

OFFICIAL SEAL
TRENTON LEE WAGNER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/29/2025

16 JUNE 2026

MONICA A. STUMP CLERK
OF COURT FOR THE U.S. DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF ILLINOIS 750 MISSOURI AVE
EAST ST. LOUIS, ILLINOIS
62201

RE: JOHNSON V. WEXFORD

DEAR MRS STUMP:

I AM THE PLAINTIFF IN THE ABOVE NAMED CASE; I REQUEST THAT YOU PLEASE FILE THE INCLUDED COMPLAINT WITH THE COURT ON MY BEHALF AND MAIL ME A STAMP FILED COPY TO THE NAME AND ADDRESS PROVIDED BELOW. SHOULD YOU HAVE ANY QUESTIONS OR COMMENTS DO NOT HESITATE TO INCLUDE THEM IN YOUR MAILING.

I WANT TO THANK YOU FOR YOUR TIME AND ASSISTANCE IN THIS MATTER.

SINCERELY

William Johnson PRO SE

WILLIAM JOHNSON #M01525
P.O. BOX 1000
MENARD, IL 62259

WILLIAM JOHNSON #M01525
P.O. BOX 1000
MENARD, IL 62259

Correspondence from
Individual In Custody
LEGAL

FIRST-CLASS

ZIP 62259 $ 004.44⁰
02 7W
0008037385 JUN 17 2026

MONICA L. STUMP CLERK OF THE
COURT FOR THE U.S. DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS
750 MISSOURI AVE. EAST ST. LOUIS
ILLINOIS 62201

MAIL CLEARED
US MARSHALS

RECEIVED
JUN 2 2 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE