**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **WILLIAM JOHNSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WEXFORD HEALTH SOURCES, INC., ROB JEFFREYS, LATOYA HUGHES, ANTHONY WILLS, JOHN/JANE DOE #1 ASSISTANT WARDEN, JOHN/JANE DOE #2 ASSISTANT WARDEN, JOHN/JANE DOE #3 MEDICAL DIRECTOR, ANGELA CRAIN, CONNIE DOLCE, JOHN/JANE DOE #4 MEDICAL FURLOUGH OFFICER, MICHEAL MULDENHAUER, and JOHN/JANE DOE EMPLOYEES,**<br><br>**Defendants.** | **Case No. 26-cv-875-NJR** |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff William Johnson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Johnson alleges that Defendants were deliberately indifferent to his injured hand in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

On March 23, 2023, Johnson slammed his right thumb in his cell door, fracturing it in multiple spots (Doc. 1, p. 10). The thumb swelled and became discolored and immobile within hours (*Id.*). Johnson immediately submitted written request slips and sick call slips to the healthcare unit requesting care (*Id.*). By the following day, his thumb had doubled in size and was extremely painful (*Id.*). Johnson continued to submit request slips to be seen by the healthcare unit. He addressed these slips to Wexford, John/Jane Doe #3 Medical Director, Angela Crain, Connie Dolce, and Micheal Muldenhauer (*Id.* at p. 11). On March 26, Johnson spoke to a male nurse walking past his cell. The nurse noted that he would put Johnson in to see the doctor, but Johnson was not called to the healthcare unit (*Id.*). That same day, Johnson submitted written request slips directed to Wills and the two assistant wardens (John/Jane Doe #'s 1-2) concerning his need for care (*Id.*). The following day he mailed letters to Wexford and IDOC Director Jeffreys about his lack of medical care (*Id.* at p. 12).

Johnson also submitted an emergency grievance. Johnson alleges that Wexford, Jeffreys, and Wills failed to correct known deficiencies in the healthcare system and failed to adequately supervise, discipline, or correct their staff, including all of the named defendants (Doc. 1, p. 13). He maintains he never received a response to his grievance (*Id.*). He continued to submit written request slips every day through April 1, 2023 (*Id.*).

He believes that these slips put Muldenhauer, Crain, John/Jane Doe #3, Dolce, and all other John/Jane Does on notice of his need for care (*Id.*).

On April 1, 2023, he spoke to a sergeant in the cellhouse about his thumb (Doc. 1, p. 14). The sergeant immediately ordered an officer to escort Johnson to the healthcare unit (*Id.*). Micheal Muldenhauer examined Johnson and acknowledged that his thumb was fractured and infected (*Id.*). Johnson noted that he had submitted several request slips, letters, and an emergency grievance (*Id.*). Muldenhauer prescribed antibiotics and sent him back to the housing unit without cleaning or bandaging the thumb (*Id.*). He also failed to prescribe pain medications and refused Johnson's request to be taken to an outside hospital (*Id.*).

On April 2, 2023, Johnson went back to the healthcare unit for more antibiotics but still received no further care for his hand (Doc. 1, p. 14). But on April 3, Johnson was sent out to the local hospital for an MRI of his hand (*Id.* at p. 15). Doctors confirmed that his hand was fractured in several places and infected (*Id.*). Johnson was given a tetanus shot. The doctors at the hospital did not clean or splint the injury, nor did they prescribe any additional pain medication. They informed Johnson that only a surgeon could suture his wounds and splint the hand (*Id.*). Johnson continued to experience significant pain in his hand, and he was unable to perform simple tasks like tying his shoes, combing his hair, or shaving (*Id.* at p. 16). He began to fear that he would lose his hand due to the infection, and he faced stress, pain, fear, and humiliation (*Id.*).

On April 7, 2023, Johnson was transferred to Barnes Hospital for additional treatment (Doc. 1, p. 17). He received an x-ray and met with an orthopedic surgeon (*Id.*).

The surgeon removed Johnson's thumbnail, cleaned the wound, sutured the lacerations, and temporarily splinted the hand (*Id.*). He also prescribed pain medication (*Id.*). He was scheduled to return on April 14 for a follow-up appointment. On April 14, Johnson returned to Barnes where he received a cast and was scheduled for surgery on April 28, 2023 (*Id.* at pp. 17-18). Johnson returned to Menard and was housed in the healthcare unit while he awaited surgery.

On April 28, 2023, however, Johnson was not taken for his scheduled surgery, nor does it appear that he was informed as to why he was not taken to Barnes for his surgical appointment (Doc. 1, p. 18). On April 30, Johnson submitted request slips to the assistant wardens, Muldenhauer, Connie Dolce, and Angela Crain about his surgery. He never received a response (*Id.*). He also sent letters to Wexford, Wills, and Jeffreys but never received a response (*Id.* at pp. 18-19). On May 9, he submitted an emergency grievance, this time about the missed surgery (*Id.* at p. 19). He never received a response.

On May 16, 2023, Johnson spoke to Muldenhauer as he walked by Johnson's cell (Doc. 1, p. 19). Johnson asked why he was not taken to his surgical appointment and Muldenhauer indicated that he had nothing to do with the decision and Johnson could file a grievance if he was unhappy with his treatment (*Id.* at p. 20). On May 18, 2023, Johnson learned from a nurse that the healthcare unit lost the surgical appointment date and that is why he missed the surgery. Johnson did not return to Barnes until June 26, 2023, where he met with Dr. Fox to have his cast removed (*Id.*). Dr. Fox indicated that the cast had been left on too long as it was supposed to be removed prior to the April 28 surgery. As a result, his thumb and hand had healed incorrectly in the cast, causing

further damage (*Id.*). Dr. Fox noted that the hand was now inoperable. The doctor ordered an x-ray and physical therapy to try to restore some function in the hand (*Id.*). But Dr. Fox noted that Johnson would always have limited mobility and pain in the hand due to the lack of surgery and improper healing (*Id.* at p. 21).

From June 27 through July 20, 2023, Johnson submitted request slips to Wills, Wexford, the assistant wardens, John/Jane Doe #3, Muldenhauer, Crain, and Dolce about his immediate need for physical therapy as ordered by Dr. Fox (Doc. 1, p. 21). He mailed letters to Wexford, Jeffreys, and Wills (*Id.*). He filed another emergency grievance (*Id.* at p. 22). Wills deemed the grievance an emergency, and on July 26, Johnson had his first physical therapy appointment (*Id.*). But on August 10, Johnson was removed from the physical therapy line (*Id.* at pp. 22-23). He filed another emergency grievance. On August 26, he went to physical therapy, but his appointment was canceled on August 30, and he was removed from the line on August 31 (*Id.*). On September 13, he attended physical therapy, but the staff noted that his thumb was still painful, swollen, and immobile (*Id.* at p. 24). As a result, all further physical therapy was discontinued (*Id.*).

Johnson continued to write letters and grievances about the issues with his medical care (Doc. 1, pp. 23-25). On October 5, 2023, he met with Nurse Practitioner Dearmond (*Id.* at p. 25). Dearmond scheduled Johnson for another evaluation at Barnes (*Id.*). On November 14, 2023, Johnson met with a nurse practitioner at Barnes who noted that the damage to his hand might not be reversible due to the casting and lack of surgery (*Id* at p. 26). The nurse practitioner prescribed a brace and new exercises, as well as medications (*Id.*). He was also scheduled for a follow-up with Dr. Fox. Upon returning to

Menard, Johnson was moved to the North Lowers for treatment, but he was not given the medications as ordered by Dr. Fox through the nurse practitioner. These medications were voltaren and meloxicam (*Id.*). He submitted request slips to the healthcare unit addressed to the assistant wardens, Crain, Muldenhauer, Dolce, and Wexford (*Id.*). He wrote letters to Wexford, Jeffreys, and Wills (*Id.* at p. 27). On December 3, 2023, he finally received his prescription for meloxicam but did not receive voltaren (*Id.*). On December 14, 2023, Johnson again met with Dr. Fox and informed her that he only received one of the two medications (*Id.* at pp. 27-28). He also noted that his physical therapy was inconsistent and unproductive, indicating that his hand was still swollen and immobile (*Id.* at p. 28). Dr. Fox adjusted the brace and re-prescribed voltaren cream (*Id.*). She also scheduled another appointment (*Id.*).

Johnson continued to experience intermittent physical therapy appointments through February, and after February 2, his sessions were discontinued (Doc. 1, p. 28). He continued to submit written requests to Wexford, Wills, Dolce, Crain, Muldenhauer, and John/Jane Doe #'s 1-3 about his lack of physical therapy and his inability to obtain his voltaren prescription (*Id.*). He also submitted letters to Wexford, Latoya Hughes, and Wills (*Id.* at p. 29). On February 13, 2024, he filed another grievance because he was not able to attend his follow-up appointment with Dr. Fox and his physical therapy was canceled (*Id.* at pp. 29-30). He did not receive his prescription for voltaren until March 18, 2024 (*Id.* at p. 30). He missed another follow-up in March 2024 with Dr. Fox (*Id.* at p. 31). He continued to submit letters to officials complaining about the issues with his medical care (*Id.*).

Johnson finally saw Dr. Fox again on May 16, 2024. She ordered x-rays and additional testing. She determined that the condition of his hand was irreversible and was caused by the lack of surgery and the lengthy casting of his hand (Doc. 1, p. 32). She also noted that delays in his physical therapy exacerbated his injury (*Id.*). He returned to Menard. Although he was again ordered physical therapy in early July 2024, he was removed from the call line later that month (*Id.*). He had another evaluation with healthcare unit staff in September 2024, but no further treatment was recommended or ordered (*Id.* at p. 33). As a result of the delays in his care, he has lost mobility, strength, and feeling in his hand (*Id.*). He is in constant pain (*Id.*).

Johnson alleges that he believes that officials, including administration at the prison, receive grievances and are made aware of those complaints (Doc. 1, p. 33). He also alleges that staff that are named in the grievance are made aware of the grievance (*Id.*). He also notes that when he submits request slips, those should be received by the intended recipient (*Id.*).

## Preliminary Dismissals

Johnson refers to numerous John/Jane Doe staff, noting that he complained about the lack of care from these individuals. He does not identify any of these individuals with any particularity, nor does he allege when he saw a specific staff member, what they knew about his care, and what care they provided, if any. He merely alleges that he complained about the lack of medical care from John/Jane Does (Doc. 1, p. 27). Although Johnson may certainly proceed against specific, identifiable John Does (*i.e.* John Doe nurse #1 during a date certain appointment, John Doe Correctional Officer third shift,

*etc.*), his statement of claim merely refers to John/Jane Does generically. He does not even identify the number of individuals that allegedly delayed his care. Thus, any potential claim against unknown John/Jane Doe employees is **DISMISSED without prejudice**.

Johnson also alleges that Wexford is liable for the delays in his medical care. Wexford can only be liable for deliberate indifference if the company had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Johnson merely states in conclusory fashion that delays in his care were "caused by the policies and practices" of Wexford (Doc. 1, p. 35). But he fails to point to any policies that actually caused delays in his treatment. He merely states that Wexford was in charge of staffing, training, and scheduling of staff. He also says that there was a practice of failing to provide appropriate care. But nothing suggests that the company had a specific policy that delayed his initial treatment or caused him to miss his scheduled surgery. Thus, any claim against Wexford is also **DISMISSED**.

Johnson also alleges that he filed numerous grievances but failed to receive a response to many of them. He notes that Warden Wills deemed one grievance an emergency. But Wills cannot be liable simply for failing to respond to a grievance. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (there is no "free-floating obligation to put things to rights"). Thus, any claim against officials for failing to respond to Johnson's grievances is also **DISMISSED**.

Johnson also seeks to bring state claims for *respondeat superior* and indemnification. The doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). *See also Burks*, 555 F.3d at 593-94. Johnson alleges that high-ranking officials such as Hughes and Wills are obligated under Illinois statute to pay the judgment entered against their employees (Doc. 1, pp. 47-50). Under the State Employee Indemnification Act, 5 ILCS 350/1, *et seq.*, the State is obligated to indemnify "any State employee" in civil actions against the employee for "act[s] or omission[s] occurring within the scope of the employee's State employment" and the Attorney General is to appear on that employee's behalf. 5 ILCS 350/2(a) and (e)(ii). The Act does not, however, expressly create a private cause of action and Johnson has not alleged that there is an implied cause of action. *Emerald Pork, II, Ltd. v. Purina Mills, Inc.*, 17 F. Supp. 2d 816, 817 (C.D. Ill. 1998) (a private cause of action is implied when: "(1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act."). Thus, his state law claims for indemnification are **DISMISSED**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Rob Jeffreys, Latoya Hughes, Anthony Wills, Angela Crain, Connie Dolce, Micheal Muldenhauer,**

**John Doe #1 Assistant Warden, John Doe #2 Assistant Warden, John Doe #3 Medical Director, and John Doe #4 Medical Furlough Officer for delaying medical care for Johnson's hand injury.**

**Count 2:** **Illinois state law claim for intentional infliction of emotional distress against Rob Jeffreys, Latoya Hughes, Anthony Wills, Angela Crain, Connie Dolce, Micheal Muldenhauer, John Doe #1 Assistant Warden, John Doe #2 Assistant Warden, John Doe #3 Medical Director, and John Doe #4 Medical Furlough Officer for delaying medical care for Johnson's hand injury**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

***Count 1***

At this stage, Johnson states a viable claim for deliberate indifference against Muldenhauer for his treatment of Johnson's hand and delays in his care. Johnson alleges that he saw Muldenhauer on multiple occasions. During their first encounter, Muldenhauer refused to provide him with pain medication or send him to an outside hospital, although he did clean Johnson's wound. Johnson also saw Muldenhauer after he missed his surgical appointment, and Muldenhauer merely stated that he had nothing to do with the surgery and directed Johnson to file a grievance. Muldenhauer was aware

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

of Johnson's condition and medical needs, and was personally involved in his care. At this stage, that is enough to state a viable claim against Muldenhauer for the delays in his treatment. *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021) (delays in care can state a claim if the delay "exacerbated an injury or unnecessarily prolonged pain").

But as to the other individuals, including the assistant wardens (John/Jane Doe #1 and #2), Crain, Dolce, John Doe #3 Medical Director, and John Doe #4 Medical Furlough Officer, Johnson fails to allege that these individuals were both aware of his condition and personally involved in his care. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); *Burks*, 555 F.3d at 594 ("[l]iability depends on each defendant's knowledge and actions"). Johnson does not allege that he ever saw any of these individuals for treatment. Instead, Johnson merely alleges that he submitted request slips to numerous individuals about various aspects of his care. Johnson fails to indicate the specific statements made in those requests, whether they were merely sick call requests, or individual requests directed to specific defendants, and what care he sought in those requests. He merely states that he wrote to them about his medical care. But without further information about the nature of these requests, it is unclear that these slips put the individual defendants on notice of Johnson's need for care. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (correspondence to an official may establish liability when "that correspondence provides sufficient knowledge of a constitutional deprivation").

Further, the wardens and directors cannot be liable simply because of their high-ranking positions, because, as previously stated, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. Johnson alleges that he wrote to Wills, Hughes, and Jeffreys on numerous occasions and placed those letters in his cell bars to be placed in the mail. There are no allegations to suggest that these officials received the letters. Further, there are no allegations to suggest that any of them acted with deliberate indifference. He merely alleges that he failed to receive a response. Although an official can be liable if he facilities or turns a blind eye to the conduct, there are simply no allegations to suggest that these officials received the letters, were aware of his need for care, and failed to respond. *See Perez,* 792 F.3d at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it") (quotations omitted). Johnson merely alleges in conclusory fashion that Wills, Jeffreys, and Hughes were aware of systemic issues with healthcare at the prison. He alleges there was a widespread issue with medical care but only cites to his own care without providing any further allegations to suggest a widespread issue which officials allegedly ignored. Further, as high-ranking officials, they were allowed to delegate the treatment of inmates to the medical providers. *See Burks*, 555 F.3d at 595. Thus, Johnson fails to adequately allege a claim against any of the remaining defendants. The claim against John/Jane Doe #1 and #2, Crain, Dolce, John Doe #3 Medical Director, John Doe #4 Medical Furlough Officer, Anthony Wills, Rob Jeffreys, and Latoya Hughes is **DISMISSED** from Count 1.

***Count 2***

Johnson's state law claim for intentional infliction of emotional distress shall proceed against Muldenhauer, but it is **DISMISSED without prejudice** as to the other defendants.

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against Micheal Muldenhauer. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Micheal Muldenhauer: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to defendant's place of employment as identified by Johnson. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If defendant can no longer be found at the work address provided by Johnson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Because Johnson's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Johnson, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Johnson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 30, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendant will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. When defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**